UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**STEVEN PARKER SCRUGGS**                                                        **PLAINTIFF**

V.                           4:23-cv-00166 JM

**MATTHEW DILLON FITZHUGH, in his individual
And official capacity; SCOTT STEELY, in his official
Capacity; and the CITY OF CABOT, ARKANSAS**            **DEFENDANTS**

## ORDER

Pending are cross motions for summary judgment. The parties have fully briefed the issues and the motions are ripe for consideration.

I.     Facts

The facts of the case are generally undisputed because most of the parties' interactions are recorded and transcribed. On April 11, 2022, at approximately 12:19 p.m., Cabot Police Department received a call from Christina Moore, an employee at the Cabot Walmart, requesting that a police officer be sent to the location.

| Dispatcher: | Cabot Police Department |
|---|---|
| Moore: | Yes, Ma'am. I work at the Cabot Walmart, and I was just needing to have a police officer come out. |
| Dispatcher: | Okay. What's going on? |
| Moore: | We have a solicitor in the parking lot. We've asked him to leave multiple times, different days. He's back out here again. He's asking for signatures. Last I heard, he was asking for signatures for marijuana. |
| | \*\*\* |
| Dispatcher: | and he's out in your parking lot? |

| | |
|---|---|
| Moore: | Yes, ma'am, right now. We haven't told him to leave just yet because we've already told him before he just keeps coming back, so now we're just going to call – we would just call you guys. |

(Tr. of dispatch call, ECF No. 26-1 at 2:2-12, 3:4-10). However, the information relayed to the police officer by the dispatcher was that the man gathering signatures had been asked to leave several times by Walmart and he refused.

Officer Fitzhugh of the Cabot Police Department responded to the call. He made contact in the Walmart parking lot with the suspect, Scruggs, who matched the description relayed by dispatch.

| | |
|---|---|
| Fitzhugh: | Okay. Do you have any ID on you? |
| Scruggs: | Yeah, man. Why? |
| Fitzhugh: | Just – just so I can log who I'm out with. That's it. |
| Scruggs: | Well, man, you know my ID should – might be in my truck. |
| Fitzhugh: | Where's your truck at? |
| Scruggs: | It's over here, but – but you don't need my ID. |
| Fitzhugh: | Yeah. I'm going to ID you. |
| Scruggs: | Well, for what? |
| Fitzhugh: | So I can log who I made contact with. |
| Scruggs: | Well, I'll tell you – |
| Fitzhugh: | I got – |
| Scruggs: | I'll tell you my name but you don't need – |
| Fitzhugh: | I got – |
| Scruggs: | -- my ID. |
| Fitzhugh: | I got a call, so – |
| Scruggs: | A call for what? |
| Fitzhugh: | Because you were in there and they asked you to leave a couple times and |
| Scruggs: | Ain't nobody asked me to leave from here. |
| Fitzhugh: | They said – Walmart called, man. |

| | |
|---|---|
| Scruggs: | Ain't nobody asked me to leave, man. |
| Fitzhugh: | So – |
| Scruggs: | -- so I ain't – I'll leave, but you don't need my name. |
| Fitzhugh: | Yes. |
| Scruggs: | (Unintelligible) |
| Fitzhugh: | Where – come here. |
| Scruggs: | Huh? |
| Fitzhugh: | Where's your truck at? |
| Scruggs: | My truck is over here, bro. |
| Fitzhugh: | Okay. |
| Scruggs: | But you – but you don't – but you don't – but you don't – but you don't need – you don't need – you don't need – |
| Fitzhugh: | Yes. |
| Scruggs: | -- to (unreportable crosstalk) – |
| Fitzhugh: | I'm going – I'm going to ID you. |
| Scruggs: | I'm leaving. I'm leaving. Okay? |

(Tr., ECF No. 25-3, 2:5-4:6).

Fitzhugh starts calling for back up on his police radio while he is following behind Scruggs to his truck. Scruggs continues to walk and tell Fitzhugh that he is leaving and there is no need for all of this. Scruggs tells Fitzhugh that he doesn't have the right to ID him and that he was working. Fitzhugh tells Scruggs to "come here" and Scruggs responds no and re-iterates that he is leaving. After approximately one minute and thirty seconds of walking, Fitzhugh grabs Scruggs's arm and says, "come here." Scruggs resists and continues saying, "Don't grab me, man."

| | |
|---|---|
| Fitzhugh: | Relax |
| Scruggs: | Get your hands off me, man. Get your fucking hands off me – |
| Fitzhugh: | Relax. |
| Scruggs: | -- bro. Get off me. Get the fuck off me. I ain't done a damn thing. |

3

      Fitzhugh:      I'm fixing to fucking taze you if you don't –

      Scruggs:      No. I – I have nothing to say, man. I ain't done nothing.

      Fitzhugh:      Put your hands behind your back. I'm fixing to taze you.

*Id.* at 7:3-14.

At this point, Cabot Police Officer Kelley arrived at the scene. Kelley grabbed Scruggs's left arm to place him in hand restraints. Kelley and Fitzhugh pushed Scruggs against a wall. While in that position, Kelley and Fitzhugh tried to get Scruggs's hands behind his back, but Scruggs continues to resist. Fitzhugh warned Scruggs that he would be tased and commanded him to put his hands behind his back. Fitzhugh then tased Scruggs in the back and Fitzhugh's body cam stopped recording. Fitzhugh was transported to the Cabot Police Department and booked in on resisting arrest. He was cited and released.

Scruggs filed suit against Fitzhugh in his individual capacity for violation of his Fourth and Fourteenth Amendment rights to be free from unreasonable seizure and excessive force. He alleges that Fitzhugh and Scott Steely in their official capacities violated his Fourth Amendments right to be free from unreasonable seizure. He further alleges that the City of Cabot and the Cabot Police Department ratified the unlawful actions of Fitzhugh by failing to investigate his actions, take corrective or disciplinary measures against him and by authorizing Cabot Police officers to carry out unconstitutional policies and customs. Scruggs has filed a motion for summary judgment as to Defendants' liability. The Defendants have filed a cross motion for summary judgment as to all of Scruggs' claims.

      II.      Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874

(8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*,  [to] point out to the District Court,  that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent s burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

III.     Analysis of the Law

The Defendants contend that Fitzhugh did not violate Scruggs' Fourth Amendment rights because he had a reasonable suspicion to investigate whether Scruggs was committing the offense of trespass and probable cause to arrest Scruggs for fleeing and obstructing governmental operations. They argue that Fitzhugh used a reasonable amount of force in arresting Scruggs. Further, Defendants contend that even if Fitzhugh violated Scruggs' Fourth Amendment rights, he is entitled to qualified immunity in is individual capacity.

"Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* at 496 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

A.     Reasonable Suspicion

"Under the Fourth Amendment, officers may "conduct a brief investigative stop when they have 'reasonable, articulable suspicion that a person is committing or is about to commit a crime.' The officers must be able to identify 'specific, articulable facts' that justify the stop. Whether the officers had reasonable suspicion to conduct a stop is determined by the totality of the circumstances." *United States v. Trogdon*, 789 F.3d 907, 910 (8th Cir. 2015) (quoting *United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010)). Fitzhugh was told, albeit incorrectly, by the dispatch officer that a canvasser matching Scruggs' description had been asked to leave the

Walmart parking lot several times and refused. Based upon this information, an officer in Fitzhugh's position would reasonably believe that Scruggs had been trespassing when he observed Scruggs on Walmart property. *Compare United States v. Trogdon*, 789 F.3d 907, 913 (8th Cir. 2015) (Officers had a reasonable belief that suspects were trespassing when the possible trespass was occurring before their eyes and there had been reports from a property owner that trespasses had been occurring.), *with United States v. Hughes*, 517 F.3d 1013, 1017-18 (8th Cir. 2008) (*Terry* stop was not justified to investigate a prior alleged trespass.)

      Scruggs argues that Fitzhugh's reasonable suspicion was immediately dispelled by Scruggs' statement that he had not been asked to leave and by his action of walking away. Many suspects deny having committed a crime when questioned by a police officer. A police officer does not violate a suspect's Fourth Amendment rights by investigating further when the suspect denies involvement in a crime as long as the officer has a reasonable suspicion. Fitzhugh continued to have a reasonable suspicion that Scruggs was trespassing even after Scruggs' denial.

      Scruggs argues that he could not have committed a trespass under Arkansas law, Ark. Code Ann. § 5-39-304, because as soon as he received notice, he immediately left Walmart property. However, the question is not whether Scruggs actually committed a crime. It is whether Fitzhugh had a reasonable suspicion supported by articulable facts to believe Scruggs had been trespassing.

      Scruggs' argues that the Defendants "made up a lie about Scruggs to create a reason to arrest him" after the fact. This theory is contradicted by the audio recording of the dispatch officer's conversation with Fitzhugh. If Scruggs is accusing the Defendants of creating the lie

7

before the dispatch officer called Fitzhugh, Scruggs has failed to provide any evidence to support the accusation.

The Court finds that Fitzhugh had a reasonable suspicion that Scruggs was trespassing on Walmart property during his encounter with Scruggs and lawfully requested Scruggs' identification in order to investigate the offense. *See* Ark. R. Crim. P. 2.2.

B.      Excessive Force

As for Scruggs' excessive force claim, the Court must determine whether the facts alleged by Scruggs support his allegation that Officer Fitzhugh violated his Fourth Amendment right to be free from excessive force during the investigative stop and arrest. "The Supreme Court's 'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Id.* (quoting *Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006)).

The reasonableness of an officer's use of force is evaluated from the perspective of a reasonable officer on the scene. "The reasonableness inquiry, however, is an objective one: 'the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them.' Circumstances relevant to the reasonableness of the officer's conduct include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* at 496 (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1994)).

8

The Court is guided by the Eighth Circuit's opinion in *Rudley v. Little Rock Police Department*. In *Rudley*, a school security officer was called by the principal to escort a parent and her son out of the building. Officer Bryant was told by the principal that the parent, Ms. Rudley, had thrown a book at him during a conference about her son. Upon making contact with Ms. Rudley, Bryant requested identification from her. Ms. Rudley stated that her ID was in her car. Bryant and another school security officer escorted Ms. Rudley and her son to the parking lot. While Ms. Rudley reached into her car, her son became concerned that Bryant was standing too close to his mother and perceived that Bryant was reaching for his gun. When the son asked Bryant what he was reaching for, Bryant informed him that he was under arrest.

As Bryant walked around the car, Ms. Rudley inserted herself between Bryant and her son. According to Bryant, Ms. Rudley pushed Officer Bryant at this time. Rudley contended that she merely fell into Officer Bryant. Bryant took a step and said "taser" because he thought Ms. Rudley was pushing him. As Bryant first deployed his taser on Ms. Rudley, his camera began recording the incident. Ms. Rudley is seen on the ground and her son is helping her up. Ms. Rudley states to Bryant, "Wait a minute [expletive]." Bryant responds, "No you're under arrest. . .. Stop!" Ms. Rudley turns toward Bryant, and he deploys his taser again on Ms. Rudley. Before the incident was under control, Bryant had tased Ms. Rudley three times. Ms. Rudley filed suit claiming that Officer Bryant used excessive force in violation of her Fourth Amendment rights while arresting her.

The Eighth Circuit found that Bryant did not violate Rudley's clearly established rights. "[W]e conclude that neither Rudley nor the district court has identified controlling authority establishing a right to be free from any of the three tasings applied against Rudley." *Rudley v.*

9

*Little Rock Police Dept.*, 935 F.3d 651, 653 (8th Cir. 2019). The Court explained that the situation involved aggressive behavior and a chaotic and combative scene. *Id.* at 654.

> Prior to their altercation, Bryant believed Rudley to have thrown a book at the principal. . . . Rudley then physically inserted herself between [her son] and Bryant, directed an expletive at Bryant, and stepped toward him, ignoring his command to stop. Following his first tasing and continuing through the second, Rudley further contravened Bryant's prior command by walking toward [her son] and [the other security officer involved]. ... Rudley may have seemingly posed little physical danger to the officers, shod as she was in high-heeled shoes. Based on Rudley's behavior and the information known to Bryant at the time, however, 'a reasonable officer in [Bryant's] position could have believed that it was important to control the situation and to prevent a confrontation ... that could escalate.' Rudley's was not the case of an individual 'who did not resist arrest, did not threaten the officer, did not attempt to run from him, and did not behave aggressively towards him.'

*Id.* (quoting *Kelsay v. Ernst*, 933 F.3d 975, 981 (8th Cir. 2019) and *Shekleton v. Eichenberger*, 677 F.3d 261, 366 (8th Cir. 2012)).

Here, Scruggs was not detained until he walked away from Fitzhugh and Fitzhugh told him to stop. At that point in the encounter, Fitzhugh had reason to believe that Scruggs was fleeing. Fitzhugh physically touched Scruggs to get him to stop and Scruggs became combative. Scruggs resisted arrest, directed an expletive at Fitzhugh, attempted to flee, and behaved aggressively. Based on Scruggs' behavior and the information known to Fitzhugh at the time, a reasonable officer in Fitzhugh's position "could have believed that it was important to control the situation and to prevent a confrontation ... that could escalate." *Id.* Pursuant to *Rudley*, the Court finds that Scruggs has not identified controlling authority establishing a right to be free from the tasing applied to him. Fitzhugh's actions did not violate Scruggs' Fourth Amendment rights.

Because there was no constitutional violation by Fitzhugh, there is no claim against Scott Steely or the City of Cabot.

IV.     Conclusion

For these reasons, Defendants' motion for summary judgment (ECF No. 18) is GRANTED and Scruggs' motion for partial summary judgment (ECF No. 17) is DENIED. The Clerk is directed to close the case.

IT IS SO ORDERED this 27th day of September, 2024.

_____
James M. Moody Jr.
United States District Judge